Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. This is Judge Wilson in Tampa, Judge Lagoa is in Miami, and Judge Carnes is in Montgomery. And we have three appeals that are scheduled for oral argument this morning. The first appeal is the United States of America v. Moore, Ingram, Johnson & Steel. And I see that counsel are ready to proceed. Jeffrey Dax is here for the appellate. Moore, Ingram, and Douglas Rennie is here for the United States. And Mr. Dax, are you ready to proceed with your argument? Yes, your honor. Thank you very much. Judge Wilson, Judge Lagoa, and Judge Carnes, good morning. And thank you for being here and for your time. It's very nice seeing each of you. May it please the court. My name is Jeff Dax, and I'm a partner with the Marietta Insurance Defense Firm of Moore, Ingram, Johnson & Steel, where I've practiced commercial and employment litigation since starting there in 1997. My presentation today is supported by the record, which contains recommendations and orders from the Northern District of Georgia, filings and findings from two Kentucky District Court matters, which include itemized privilege logs, and the affidavit of Matthew Howard, who is a senior partner at Moore, Ingram, Johnson & Steel, overseeing the MIJS captive management program. Today, we are asking this court to apply the clear error standard of review to reverse and remand an order of the Northern District of Georgia as it concerns categorical privilege logging, and to apply a de novo standard of review to a related privilege estoppel ruling. The IRS promoter audit, and the summons that is the subject of this litigation, are part of a larger initiative by the IRS to eliminate micro-captive insurance companies. What the IRS refuses to recognize, however, is that these micro-captive insurance companies are an invaluable resource to their insured businesses. Counsel, that has nothing to do with the issues before us. No, Your Honor. Your Honor, why don't you get to the issue of the summons? Certainly. There are two issues, Your Honor, which require the court's attention for appellate review. The first of those issues, well, let me explain why there are only two issues. As you mentioned, while the scope of the summons is not an issue necessarily, it's because of the fact that MIJS has continued… Actually, Counsel, that's not what I said. I said that the policy behind allowing captive insurance companies or not is not before us. The scope of the summons, if you want to argue it, is. The summons isn't. Understood, Your Honor. Thank you. Due to the passage of time, however, and the fact that MIJS has continued to fully Most of the appellate issues initially raised by MIJS have now been mooted, including those related to the scope of the summons. In fact, at present, MIJS will or has provided the IRS with all responsive documentation concerning its 202 captive insurance clients, withholding only communications which remain to be parsed for privilege. As such… Are you still contesting, then, the privilege log, whether it should be categorical or itemized? Yes, Your Honor. There are only two issues remaining for this court, and the first is the appropriateness of a categorical privilege log as allowed per Rule 26b-5, and the second is the application of Eastern and Western Kentucky District Court privilege rulings to the same documents requested here. Well, of course, how many captives were involved in the Kentucky case? There was one in the Eastern District of Kentucky and one in the Western District of Kentucky. So, two of the 202 captives that are involved in this case were involved in Kentucky? That's correct, Your Honor. So, 200 of them aren't collaterally estopped under any theory, even if we agree with you on the law? That's correct. We're not asking for any collateral estoppel as to any additional claims. The privilege logging, categorical privilege logging issue pertains to those remainder. Turning now to those… To the remainder, you mean the 200? Yes, Your Honor, with respect to the additional 200. Turning now to those two specific arguments, starting first with the privilege issue as to Kentucky claim, the District Court erred in failing to apply Kentucky privilege rulings to the same documents sought by this summons. Wait, wait, wait. That sounds inconsistent with what you just argued. I thought the position that you just stated was that it erred in not applying them to two of the 202 captives. That is what I am saying, Your Honor. With respect to the Kentucky rulings as to two captives, those same exact documents are being sought here, despite the fact that the Kentucky courts have already ruled after in-camera reviews by two magistrate court judges, and then the District Court over objection in each instance, issuing rulings as to privilege on five categories of Moringa, Johnson & Steele's communications with those captives. In fact, the record even contains evidence that in one of those instances, there was a further appeal to the Sixth Circuit that was later abandoned. Have you furnished them with the documents they've summoned on the other 200 counties? Yes, Your Honor, with respect to all of the other… In fact, all of the 202 clients. That's the reason why the summons' breadth has now been mooted by the passage of time. Since the date of the summons, as well as post-summons to the present, we have continued on a rolling basis to produce all of the materials responsive to the summons… For the 27 categories? Yes, Your Honor, as it concerns all of the 202 clients. So, the only remaining issue, aside from the two cases in Kentucky, concern the communications subject to privilege logging. Is the fact that you've furnished those records in the record that's before us? Some of them are, and some of them are not. So, you're arguing matters that are not in the record? Your Honor, I am mooting my argument as to the additional… because of the additional productions. We had produced some information prior to the… No, no, you're not mooting it. You're telling us that it's moot. Nothing in the record, no stipulation by you and the IRS to support that. We have before us a record and a ruling, which you brought before us. Yes, Your Honor. We are not… We are no no-go. I'm sorry. The process of deciding the issue you brought to us based on the record you brought to us, and you're telling us that that's largely moot because of reasons outside the record. We have continued to produce records, and therefore, we are no longer contesting the breadth issue. So, the records were furnished after the briefs were filed in this case? Some of the records were produced before the briefs were filed, and records have continued to be produced because the district court order was not stopped. What you're telling us is the issues that you raised in your initial brief with regards to that, you're abandoning them on this appeal? Yes, Your Honor. The only two issues remaining for consideration from our perspective concern whether or not the two Kentucky district court rulings stop the production of the information that's also being sought here that is the exact same. But if you produce the records, what difference does that make? We have not produced the privileged records. We have produced privileged logs in the Kentucky cases, and here, we have reproduced the same privileged logs. But the difference, Your Honor, is that in the Kentucky cases, those four judges deemed the materials after further review to actually be privileged, whereas a log generally just reflects our opinion that the material should be withheld based on privilege. There's been a further determination in Kentucky which differs. In regards to the records that you say were already furnished to the United States, did it include an item-by-item privileged log? The item-by-item privileged logs in the record are the ones which were within the Kentucky cases, Your Honor. No, but counsel, you don't seem to understand, or maybe we don't understand because you didn't bother to inform us before oral argument today, but the Kentucky rulings involve two of 202 captives. And when we ask you if you produce privileged logs in this case as to the 202 companies, you tell us that the privileged logs in this case are the same as in the Kentucky case. Sorry for confusing the record. What I was trying to tell the court is that the Kentucky privileged logs have also been reproduced here and are part of the record. They do not concern the other 200 clients, which is why we are asking that this court overrule for clear error the district court's ruling, which requires a detailed privileged log as to the remainder of the communications in the 200 additional files on the basis that Rule 26b-5 does not require an itemized log of that sort when there's evidence not only of burden, but evidence that the same categories of information are found year by year across each of the MIJS 202 client files. And moreover, the record confirms that the detailed logs which were provided in Kentucky were sufficient in that there was a review by the judges in camera and the IRS was able to because the unrebutted evidence is that the additional information across all of the other files is the same. This is a situation where Rule 26b-5a gives guidance that all that a log needs is, quote, to be done in a manner that will enable other parties to assess the claim. And the two cases we cited to from this circuit, which were magistrate rulings in Totten and require the detail of an itemized log where it would be unduly burdensome and the additional information to be gleaned would be of no material benefit. Now, may I ask you a question? My understanding also, and you can tell me if I'm incorrect, is because the Kentucky courts have deemed these documents privileged, you're saying, are you saying that the IRS is getting a second bite at the apple in order to challenge this if they do it here? And that we should then apply collateral estoppel to the rulings from the Kentucky judges as to those two captives? As to those two cases, I would argue that it's a fifth bite at the apple. But I also argue that the logging there is sufficiently detailed that since there's not been any evidence to the contrary, those logs give enough guidance to the IRS for them to challenge a categorical log as to the remainder. And the IRS has been a party in the Kentucky litigation with regards to those two companies. I see that my time has elapsed. May I answer the question? Judge Wilson? Yes. Yes, Your Honor. The IRS was the party in both of those Kentucky cases. And that is found in Appendix 1, Document 10. Let me ask you this. Did you make the argument to the district court that the privileged logs that were filed or the documents produced in Kentucky were sufficient to give the IRS the same information as to the other 200 captives? May I answer the question, please? Of course, you can. I asked you to answer the question. Thank you. I'm sorry. Yes, the issue was raised with the magistrate court and also with the district court below. Have there been any developments since you raised that issue in the district court that weren't before the district court at the time? Yes, Your Honor. We have, as I mentioned, we have continued a rolling production. And as part of our rolling production, we have actually produced 10 privileged logs. So at this point, we have now produced 16 logs as to the 202 clients. All right, Mr. Dax, you've reserved some time for rebuttal. Let's hear from Mr. Rennie. Thank you. Good morning, Your Honor. Steglitz Rennie for the United States. It sounds like the firm is conceding the first two issues they were raising in their briefs regarding... We're having a little hard time hearing you, Mr. Rennie. I apologize, Your Honor. It sounds to me, this is news to me, but it appears that the firm is conceding. The first two issues in their briefs regarding whether the IRS party has these documents or has enough documents to conduct its investigation. This is news to me, Your Honors. But I don't want to belabor the point by re-arguing things that are in the briefs. So I'll turn to the privilege issues. Now, typically, when a party asserts the privilege, they attempt to show that the elements of the privilege are satisfied for the documents in question. But the firm has never really tried to do this. Instead, they're relying on these two Kentucky cases. And the district court correctly found that their collateral estoppel argument was weak because they failed to make it to the magistrate's. And I should point out that they're a law firm. This is not a pro se party where we liberally construe their pleadings. If they meant to say collateral estoppel or issue preclusion, they could have well done that. But regardless, even if we did look at collateral estoppel, it doesn't apply here because they have not unambiguously shown that the actions involve the same set of documents. In fact, it's clear that they don't. The Kentucky cases involved a few hundred emails, while the firm appears to be holding a much broader set of documents in this case. Their summons response indicates that they're withholding commercial insurance policies, tax returns, descriptions of products and services, feasibility studies, notices of claims, client payroll information, ownership information, and client litigation history. The Kentucky cases only involve emails without their attachments. And those courts predicated their ruling on the notion that there had been a full response otherwise to those summons. And other than referring to these two cases, the firm has not attempted to show that the elements of privilege are satisfied. So regarding the privilege law, it's a black letter of law that you have to establish the basis, as this court explained in the Lipnack case. Blanket assertion of privilege is not sufficient because it disables the court and the adversary from testing the merits of a privilege claim. Even in rare circumstances where categorical privilege laws are appropriate, situations like the Teledyne case, where that party actually produced a 340-page itemized privilege law, and they only asked to categorically log documents for an internal investigation that took place in the months preceding where they filed suit. Even in those situations where it's appropriate, which is not the case, a categorical privilege law has to provide sufficient information for the opposing party to test the merits of the privilege. And we don't have anything like that here. In their briefing, they suggested that they had produced a categorical privilege law, and they cited their summons response, which is not anything like a privilege law at all. What it seems like they're really saying is that they don't want to conduct a privilege review at all, but even if a categorical privilege law was appropriate, they would have to look at the documents to determine whether they're privileged. That doesn't absolve a party from having to actually review documents and see that the elements are satisfied. Moreover, if there are a lot of documents, as they're saying, that are categorically identical, that would seem to make an item-by-item law easier to compare because they could just cut and paste the relevant information. One other thing I would point out on the privilege issues, Your Honor, they note in their brief on page four of the reply, among other places, they say that some of these third parties had categorically identical documents to what the firms were holding on privilege claims. If that's the case, then these documents could not have been created for the purpose of relaying or providing legal advice or with the expectation that they would be kept confidential. These are management and actuarial companies. They're not attorneys. If the court has no other questions, I'll just briefly conclude and rest on our briefs by saying that the IRS's summons power is greater than that of a party in civil litigation. As the former Fifth Circuit said in the United States versus the Fed, it's analogous to that of a grand jury, one which should be judged by the Supreme Court. The broad powers are justified because we have a tax system that relies on self-reporting. They are intended to ensure that taxpayers pay what Congress has mandated, prevent dishonest persons from escaping taxation, and shifting heavier burdens to honest taxpayers, as the Supreme Court stated in the United States versus the Fed. We would submit that the summons at issue here was well within the scope of that power. The district court did not clearly err in enforcing it. We would request that this court confirm. Thank you. All right. Thank you, Mr. Rennie. Mr. Dax, you've reserved some time for rebuttal. And so, Mr. Dax, you've reserved some time for rebuttal? Yes, thank you so much. Let me just ask you just one question before you begin. The only issue that we have to decide is whether or not the court clearly erred in enforcing the IRS summons, period. Is that right? Your Honor, we have two issues that we would like the court's decision on. The first is whether the privilege rulings in Kentucky should be applied as to those same documents, not a broader set, only the identical documents that the courts already reviewed in Kentucky, which are being looked at again and sought again here for the fifth bite at the apple. The second is— Are you talking about the emails? We understand from the IRS there were no documents attached to the emails. Yes, Your Honor. So you're claiming collateral estoppel only as to the exact documents involved in the two captive cases litigation in Kentucky? Yes, Your Honor. Not an iota broader. And then in addition to that, we are seeking a ruling concerning a categorical privilege log, which is appropriate here where the unrebutted evidence, there's only evidence in the record on one side, which is what makes this clear error. The evidence in the record is that there are sufficient privilege logs in Kentucky from which the IRS was able to mount a substantive challenge. The evidence also shows that the same information is across each file and that MIG— Evidence in this record details the documents that were involved in Kentucky and details that they're adequate to mount the challenge that the IRS has the ability to mount. Yes, Your Honor. And more importantly, there's no IRS evidence for the contrary. Counsel, how do we determine that those are adequate for the IRS to mount the challenge if we haven't seen them and the IRS hasn't seen them? You're the only—your party is the only one that has seen them. Your Honors, that's a great question. The reason this is clear error— Why don't you answer it? The reason this is clear error is because there was no evidence from the IRS that they You have conceded the prima facie case and now you're asking us to take it on faith based only on your and your client's representation that those documents are adequate without showing the IRS what other documents are available. The IRS needs to mount a challenge. They have what they need in order to mount the challenge because there's no other— There's no evidence in the record. There's only our evidence. Of course there isn't because you haven't given it to them. We had a hearing and they didn't provide evidence, Your Honor. They asked for the evidence and you wouldn't supply it. That's what the whole proceeding is about. It seems to me like you've got an absurd catch-22 here. You can't have the evidence unless you can prove what the evidence is, and we're not going to tell you what the evidence is. I mean, that's—I don't understand that argument. But let me ask you one other thing. On the collateral estoppel, where exactly in the record do we look to see that you raised the collateral estoppel issue before the magistrate judge? Your Honor, in the briefing before the magistrate judge, we told the magistrate judge that the documents that are sought in Kentucky that were ruled upon four times in Kentucky were the exact same documents being sought— where do the words collateral estoppel appear in the record before the magistrate judge? We did not use the collateral estoppel legal theory argument per se. We simply argued the facts and law about the concept. But you didn't say it was collateral estoppel. We did not say that. That's correct. Okay. So the district court ruled that you had waived it by not raising it before the magistrate judge. What's your response to that? The district court correctly ruled that we hadn't raised collateral estoppel by legal concept name. But, however, the district court did look at the issue and evaluate whether or not— Alternatively, after finding it was waived. The district court did look at the issue and found that we had argued the similarity bars the relitigation and then found against us. Did the district court hold that you had waived the issue by not raising it before the magistrate judge? As I read the district court's ruling, the court confirmed that we hadn't raised collateral estoppel by concept, but that we had argued that the rulings in Kentucky were the same rulings as to the same documents that we sought to have applied in the district court here. So you're not willing to concede that the district court held that collateral estoppel had been waived and then, alternatively, it didn't have any merit? I don't think that's what the district court ruling says. Okay. Well, we'll look at that. Thank you, counsel. Thank you very much for your time. Thank you both.